FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 MAR 22  P 2: 41

CLERK'S OFFICE
AT GREENBELT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

SAM WANG PRODUCE, INC., et al.          :
        Plaintiffs,                 :
                                    :
v.                                      :   Case No. 8:10-cv-02286-PJM
                                    :
MS GRAND, INC., et al.                  :
        Defendants.                 :

## ORDER APPOINTING TEMPORARY RECEIVER

This matter is before the Court upon Plaintiffs' *Emergency* Motion for Order Appointing Receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure. After careful consideration of the record, and for the reasons stated at the hearing on March 21, 2013, and as further set forth below, the Court makes the following findings of fact and conclusions of law.

Federal courts are vested with the equity power to appoint receivers and administer receiverships. *Gilchrist v. G.E. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001). To determine whether to appoint a receiver, federal courts weigh the following factors: (i) inadequacy of the security to satisfy the debt; (ii) financial position of the defendant; (iii) fraudulent conduct on defendant's part; (iv) inadequacy of legal remedies; (v) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (vi) probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment; (vii) probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and (viii) whether moving party's interests sought to be protected will in fact be well-served by receivership. *Brill & Harrington Investments v. Vernon Savings & Loan Assoc.*, 787 F. Supp. 250, 253-54 (D.D.C. 1992).

A review of the record in this matter shows that Plaintiffs and similarly situated PACA trust creditors are *bona fide* trust creditors of bankrupt debtor/defendant MS Grand, Inc. ("MS Grand") under the trust provision of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(2) in the unpaid amount of $1,700,000.00, plus additional interest and attorneys' fees. MS Grand is owed $3,879,202.22 as of November 30, 2012 from produce sales made to its affiliated grocery stores: Grand Mart 7 Inc. ("Falls Church Store"), Grand Mart International Food, LLC ("Sterling Store"), Lucky World Gaithersburg, Inc. ("Gaithersburg Store"), Man Min, Inc. ("Centreville Store"), Grand Mart Inc. ("Alexandria Store"), and JK Melrose Market, Inc. d/b/a Super Grand ("Laurel Store"). (All stores collectively the "Grocery Stores.") MS Grand is also owed $369,037.37 as of November 30, 2012 for sales made to its affiliated wholesale food company, MS 3000, Inc. ("MS 3000"). (The Grocery Stores and MS 3000 are collectively the "Kang Companies.") In addition, National Consumer Cooperative Bank ("NCCB"), United Leasing Corporation ("ULC"), and Nara Bank have asserted secured claims against the assets of certain of the Grocery Stores.

It appears that Plaintiffs have satisfied the eight factors evaluated for the appointment of a temporary receiver and appointing a temporary receiver is appropriate.

There is no adequate security to satisfy the debt because the Kang Companies' only value to Plaintiffs lies in their continued operation and orderly sale or wind down. Without such oversight, the value of the Kang Companies will be diminished.

The Kang Companies' financial position is dire because they are operating with over $4 million owed to MS Grand, Inc. The Centreville and Laurel Stores each owe $1.3 million to MS Grand as of November 30, 2012. These large unpaid amounts payable indicate that the Kang Companies are in a precarious financial situation.

There are no other adequate legal remedies to protect the rights of the Plaintiffs. Appointment of a temporary receiver is the best remedy to preserve the assets of the Kang Companies as ongoing concerns and ensure that PACA trust assets are preserved.

The Kang Companies' assets are in imminent danger of being lost, concealed, injured, diminished in value, or squandered. The Examiner appointed in the MS Grand and Kangs' bankruptcies exercised oversight over the operations of some of the Grocery Stores. The newly appointed Chapter 11 Trustee is not exercising such oversight. There is no current oversight over MS 3000. Raymond A. Yancey, the Chapter 11 Trustee appointed in *In re Min Sik Kang, et al*, Case No. 10-18839 (Bankr. E.D. Va.) has represented, by counsel, that he will reasonably cooperate with the temporary receiver by timely providing the temporary receiver with copies of documents in his possession that pertain to the income, obligations, operation and management of the Grocery Stores.

The harm to Plaintiffs in denying appointment of a temporary receiver outweighs injury to any party opposing appointment.

Plaintiffs have a great likelihood of success on this action, and are in danger of irreparable injury without appointment of a receiver. Dissipation of PACA trust assets is likely absent a temporary receiver, and is considered irreparable harm to PACA trust creditors.

Plaintiffs' interests as PACA trust creditors will in fact be well-served by receivership.

Plaintiffs represent that they have no evidence of fraudulent activity at this time, but upon information and belief, allege that the common control of the finances and business practices by the Kangs of MS Grand and the Kang Companies negate any bona fide purchaser defense the Kang Companies may have had and caused a violation of statutory duties under the PACA and contravened Plaintiffs' trust rights.

Accordingly, based on the foregoing, the Court finds that Plaintiffs have met the requirements for appointment of a temporary receiver to oversee the operations of the Kang Companies, and their potential sale as going concerns, liquidation, and wind-down.

Therefore, it is **ORDERED** by this Court as follows:

1. As of the date of this Order (the "Effective Date") Marc Weinsweig of Weinsweig Advisors is appointed as temporary equity receiver (the "Receiver") for all property of the Kang Companies, including leases of real property, personal property (including furniture, fixtures and equipment ("FF&E")), and all other assets (including accounts ("Operating Accounts") and general intangibles) of any and every kind, character and description wherever the same may be located or found (hereinafter, the "Receivership Assets"), and the Receivership Assets shall be subject to the exclusive control of the Receiver for the purpose of marshalling, preserving, accounting for and liquidating such Receivership Assets in accordance with the provisions of this Order and subject to any and all further Orders of this Court.

2. The Receiver shall post bond in the amount of $3 million.

3. The Receiver, upon the Effective Date, is granted possession of the Receivership Assets and shall have the full power and authority to operate, manage, and conserve the Receivership Assets. Without limiting the foregoing, the Receiver shall have the power and authority to (and, as applicable, is directed to):

   a. Take exclusive custody, control, and possession of the Receivership Assets, wherever situated.

   b. Subject to the availability of the funds to do so, preserve, hold and manage the Receivership Assets that he collects, and perform all acts necessary to preserve the value of those Receivership Assets, in order to prevent any loss, damage or injury thereto.

c.  In consultation with Plaintiffs' counsel and counsel for NCCB, ULC, and the Chapter 11 or, if applicable, a subsequently appointed Chapter 7 Trustee for MS Grand, Inc. ("the Trustee"), terminate employees, contracts, agreements and otherwise perform all acts necessary to cease the operations of the business of the Kang Companies, and to liquidate the Receivership Assets, as further provided in sub-paragraph 3(q).

d.  Close Grocery Stores that the Receiver, in his sole discretion, determines are underperforming, and, except as set forth herein, sell all remaining inventory that is in saleable condition (the "Saleable Inventory") of closed Grocery Stores to other Grocery Stores at book value. Except as set forth below, such sales may be on a cash or a credit basis, in the discretion of the Receiver. On or before April 10, 2013, the Receiver shall purchase all Saleable Inventory then remaining at the Centreville Store (the "Centreville Inventory") for the benefit and use or resale by the other Grocery Stores, with the Receiver, in his sole discretion, determining which Grocery Store or Stores needs and will purchase the Centreville Inventory, and be responsible for payment, or if purchased on credit, have an account payable. The purchase price for the Centreville Inventory shall be the book value (at cost to the Centreville Store) of the Centreville Inventory. The Receiver shall pay the purchase price for the Centreville Inventory to the Trustee, to be applied against the claims of MS Grand, Inc. for accounts receivable owed to it by the Centreville Store. On or before April 15, 2013, the Receiver shall purchase $400,000.00 of the Saleable Inventory of MS Grand, Inc. then remaining in MS Grand, Inc.'s warehouse (the "MS Grand Inventory") with any purchase over and above $400,000.00 being made at the sole discretion of the Receiver, for the benefit and use or resale by the Grocery Stores (other than any closed Grocery Stores). The Receiver, in his sole discretion, shall determine which Grocery Store or Stores needs and will purchase the MS Grand Inventory, and be responsible for payment, or if purchased on credit, have an account payable. The purchase price for the MS Grand Inventory shall be the book value (at cost to MS Grand) of the MS Grand Inventory. The purchase price for the Centreville Inventory and the MS Grand Inventory shall be paid in either cash on delivery or on a credit basis, at the discretion of the Receiver. To the extent that the Receiver elects to pay for Centreville Inventory or MS Grand Inventory on a credit basis, the Receiver will exercise his best efforts to pay the Trustee as promptly as possible consistent with the Receiver's prudent business judgment regarding the need to conserve cash for operational purposes. The Trustee shall have a priority administrative claim, subordinate to any unpaid PACA trust claims, in the Receivership for the unpaid portion of the purchase price for the Centreville Inventory and the MS Grand Inventory. Disposition of the proceeds from the Centreville Inventory and the MS Grand Inventory paid to the Trustee and priority of claims and interests thereto shall be determined by the United States Bankruptcy Court for the Eastern District of Virginia, *In re Min Sik Kang, et al*, Case No. 10-18839 (Bankr. E.D. Va.), or

any appeal therefrom. Nothing herein, including any payment to the Chapter 11 or Chapter 7 Trustee of MS Grand, Inc. for Saleable Inventory or the granting of a priority administrative claim in the Receivership to the Trustee, shall be deemed or construed as evidence that the inventory, and sales proceeds therefrom of the Grocery Stores and MS Grand, Inc. are not assets of the statutory trust under the Perishable Agricultural Commodities Act, 7 U.S.C. 499e(c). All parties expressly reserve all rights and defenses with respect to the issue of the inventory and inventory sales proceeds of the Grocery Stores and MS Grand, Inc. being subject to the statutory trust under the Perishable Agricultural Commodities Act, 7 U.S.C. 499e(c). Notwithstanding the foregoing, any purchases made by the Receiver or the Grocery Stores from MS Grand, Inc. in the ordinary course of business prior to the purchase of the MS Grand Inventory shall be purchased strictly on a COD basis at MS Grand, Inc.'s standard prices.

e. Sell or liquidate the FF&E of any closed Grocery Stores as determined by the Receiver in his sole discretion.

f. Open seven (7) interest bearing accounts at any FDIC insured and chartered financial institution with a branch located within this federal district, with such accounts to be opened under the account names of the affiliated grocery stores and MS 3000 as follows: 1) the "Falls Church Store Receiver Account;" 2) the "Sterling Store Receiver Account;" 3) the "Gaithersburg Store Receiver Account;" 4) the "Centreville Store Receiver Account;" 5) the "Alexandria Store Receiver Account;" 6) the "Laurel Store Receiver Account;" and 7) the "MS 3000 Receiver Account" " (collectively, the "Receiver Accounts"). The Receiver shall be a signatory on the Receiver Accounts, along with any employee of Weinsweig Advisors or independent contractor engaged by the Receiver. Any and all funds realized from the liquidation of a specific Kang Company's Receivership Assets will be deposited in the Receiver Account opened for that specific Kang Company. Nothing herein, including the opening of separate Receiver Accounts for the Kang Companies, shall be deemed or construed as evidence that the sales proceeds and other assets of the Kang Companies were or were not previously commingled with one another. All parties expressly reserve all rights and defenses with respect to the issue of prior commingling of Kang Company assets. Any and all claims, liens, or interests in the Receivership Assets, including the claims of secured creditors and claims of alleged PACA trust beneficiaries, shall attach to the proceeds realized from the sale of the Receivership Assets in the same priority and extent as shall exist on the Effective Date. No distributions or withdrawals may be made from the Receiver Accounts, except as authorized in this Order or by further Order of this Court. The Receiver Accounts are not subject to execution by any other creditor of the Kang Companies, except as is otherwise expressly provided herein. Any and all interest which accrues on the funds in the Receiver Accounts, from the date the Receiver Accounts are opened

Case 8:10-cv-02286-PJM Document 57 Filed 03/22/13 Page 7 of 13

to the date of distribution, shall follow the funds into the hands of the party, *pro rata*, ultimately deemed entitled to such funds.

g. Become a signatory on the Kang Companies' Operating Accounts, along with an employee of Weinsweig Advisors or independent contractor engaged by the Receiver.

h. Collect all other monies and/or property that may be owed to the Kang Companies, including pursuing potential actions and settling claims.

i. Continue existing liquor licenses and/or lottery licenses held by the Kang Companies.

j. Pay for the Kang Companies' pre-receivership purchases and employee wages and salaries in order to maintain a supply of goods to the Kang Companies and maintain sufficient employees for the Kang Companies' ongoing operations.

k. Pay taxes which may be levied against the Receivership Assets.

l. Choose, engage and employ attorneys, accountants, appraisers, financial consultants, and other third-parties, independent contractors and technical specialists, including but not limited to private investigators and locksmiths, as the Receiver deems advisable or necessary in the performance of his duties and responsibilities, upon (i) consent of Plaintiffs' counsel and counsel for NCCB and ULC, which consent shall not be unreasonably withheld or, if Plaintiffs' counsel and counsel for NCCB and ULC do not consent, (ii) Order of this Court.

m. The Receiver shall be entitled to continue in effect any existing insurance on Receivership Assets, or obtain insurance, and all insurance companies shall add the Receiver as an additional insured under such policies. The Receiver shall obtain insurance, if needed in addition to existing pre-paid coverage, for the Receivership Assets in such amounts, with such companies and to insure against such risks as the Receiver deems necessary or desirable. The Receiver may enter into any insurance premium financing arrangement the Receiver determines appropriate.

n. The Receiver is authorized, without further leave of the Court, to defend or institute and prosecute suits or summary proceedings related to Receivership Assets or the duties imposed upon the Receiver by this Order, including, but not limited to, proceedings (a) for the collection of rents, income, and other amounts; (b) for the removal of any person(s) or entity(ies) unlawfully in possession of any portion of the Receivership Assets, and (c) otherwise related to the Receivership Assets or the duties imposed upon the Receiver by this Order.

{LTB-00033548-4}   7

o. Subject to the terms of any applicable lease or deed of trust, lease any Receivership Assets, including any real property, upon commercially reasonable terms, upon (i) consent of Plaintiffs' counsel and counsel for NCCB and ULC, which consent shall not be unreasonably withheld or, if Plaintiffs' counsel and counsel for NCCB and ULC do not consent, (ii) Order of this Court.

p. Make payments and disbursements from the Operating Accounts that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.

q. Auction, sell, liquidate or otherwise dispose of all Receivership Assets without further Order of this Court, subject to consultation with counsel for Plaintiffs and counsel for NCCB, ULC, and the Trustee. All liens, claims, and encumbrances against any Receivership Assets shall attach to the proceeds from the sale of such Receivership Assets. Notwithstanding the foregoing, should a bulk sale, sale out of the ordinary course of business, or sale of substantially all of the assets of any Grocery Stores, other than the sale of the Centreville Inventory pursuant to sub-paragraph 3(d), be deemed appropriate by the Receiver, the Receiver shall obtain the consent of Plaintiffs, NCCB, ULC and the Trustee, and seek an order from this Court if such consent is not obtained.

r. After reimbursement of the Receiver's $10,000 initial retainer paid by Plaintiffs, NCCB, and UL is made as set forth below, and the Receiver's $50,000 retainer is fully funded, the Receiver shall pay an administrative fee assessment of $120,000.00 to MS Grand's Chapter 11 Trustee or any Chapter 7 Trustee subsequently appointed in *In re Min Sik Kang, et al,* Case No. 10-18839 (Bankr. E.D. Va.)

s. To the extent the Kang Companies have sufficient cash flow, and only after reimbursement of the Receiver's $10,000 initial retainer paid by Plaintiffs, NCCB, and UL is made as set forth below, and the Receiver's $50,000 retainer is fully funded, the Receiver shall make the following payments in the following order: (i) monthly payments to McCarron & Diess Client Trust Account not to exceed $105,000.00 for distribution to MS Grand's *bona fide* PACA trust creditors in accordance with the *pro rata* shares determined by the Bankruptcy Court for the Eastern District of Virginia; and (ii) make monthly payments to NCCB and ULC, not to exceed $50,000.00 each.

4. The Receiver shall cooperate, in good faith, with Plaintiffs' counsel and counsel for NCCB and ULC regarding the rights, duties and authority granted pursuant to this Order prior to seeking court intervention to resolve any dispute. This Court retains jurisdiction to adjudicate any

disputes among the Receiver, Plaintiffs' counsel and counsel for NCCB and ULC regarding the procedures established herein.

5. The Kang Companies and their respective agents, contractors, employees, officers, directors, affiliates, and principals shall and are hereby ordered to cooperate fully with the Receiver in the conduct of his duties, and shall prove the Receiver immediately any and all such information and access to any agents, employees, and principals having knowledge of the Receivership Assets and access to any records relating to the Receivership Assets and/or the operations of the Kang Companies as the Receiver shall request including but not limited to the following:

    a. Income collected for the Receivership Assets;

    b. Contracts, documents, and agreements relating to the operation, management, sale, leasing and/or control of the Receivership Assets;

    c. Documents relating to insurance policies, deposits held in escrow, real estate taxes, notices and/or bills which concern the Receivership Assets in any way;

    d. Documents relating to the condition, operation and maintenance of the Receivership Assets, or otherwise relating to any persons employed to maintain, secure or repair the Receivership Assets;

    e. A list by case name and number of all current litigation or regulatory proceedings which involve the Receivership Assets including, but not limited to: (1) abatement of taxes or reduction of assessments, (2) mechanics lien claims, (3) building code violations or zoning enforcement action; and (4) any other pending or threatened litigation or legal or related proceedings;

    f. All keys needed to operate, repair and/or maintain the Receivership Assets; and

    g. A list sufficient to identify all tenants and each tenant's contact information.

6. The Receiver shall maintain written accounts, itemizing receipts and expenditures, describing the Receivership Assets held or managed, and naming the depositories of receivership funds; and, on or before April 1, 2013, and monthly thereafter, file with the Court and serve on the

parties a report summarizing efforts to marshal, collect, administer and liquidate the Receivership Assets and otherwise perform the duties mandated by this Order.

7. The Receiver's fees shall be charged at the following rates: $375.00 per hour for Marc Weinsweig, reasonable hourly rates for support staff of the Receiver, and reasonable rates for third party professionals and vendors, including but not limited to attorneys and accountants, retained by the Receiver to assist him in fulfilling his duties and obligations as set forth in this Order. The Receiver shall also be entitled to reimbursement for all reasonable travel expenses. The Receiver is entitled to receive a retainer in the amount of $50,000, which shall be applied towards the Receiver's final invoice. The retainer shall be paid as follows: 1) an initial payment of $10,000 upon appointment of the Receiver to be paid in equal shares by Plaintiffs, NCCB, and ULC, with said payment reimbursed to these creditors from the Operating Accounts the following week; 2) thereafter, the Receiver is authorized to pay $10,000 per week from the Operating Accounts until the retainer of $50,000 is paid. All such payments, including the Retainer, may be made from the Operating Accounts, upon fee statements filed by the Receiver on a monthly basis to which no objection is filed within fifteen (15) days after the filing of the fee statement. To the extent an objection is timely asserted to a fee statement in whole or in part, the Receiver shall be paid any undisputed portion of the fee statement subject to final approval by the Court; provided, however, that upon consent of Plaintiffs' counsel, which consent shall not be unreasonably withheld, the Receiver shall be entitled to reimbursement from the Operating Accounts for all reasonable travel, lodging and related expenses without Court approval. The requests for approval of compensation shall itemize the time and nature of services rendered by the Receiver and all personnel hired by the Receiver, and shall reasonably allocate the time and expenses incurred to the specific Kang Companies which benefitted from said

services, but shall not be denied compensation for reasonable and necessary services rendered that provide overall benefit to the creditors of the Kang Companies because a specific Kang Company involved lacks operational funding to compensate the Receiver. In addition, should a sale transaction be consummated with a buyer introduced solely by WeinsweigAdvisors, and no commission is entitled to be paid to any other third party, WeinsweigAdvisors shall earn a fee to be paid upon and as a condition of the sale closing of 3.0% of the total sale consideration. All such payments may be made from the Receiver Account, upon applications filed on a monthly basis, and approved by the Court; provided, however, that upon consent of Plaintiffs' counsel, and counsel for NCCB and ULC, which consent shall not be unreasonably withheld, the Receiver shall be entitled to reimbursement from the Operating Accounts for all reasonable travel, lodging and related expenses without Court approval. The requests for approval of compensation shall itemize the time and nature of services rendered by the Receiver, his support staff, and all professionals hired by the Receiver. Nothing contained in this Order shall be construed to prohibit the Receiver from engaging employees or officers of the Kang Companies to perform services to the Receiver upon commercially reasonable terms. The Court reserves the right to reduce any fees which it deems to be excessive, including fees charged pursuant to this Paragraph. All parties reserve the right to object to the reasonableness of any fee applications filed by the Receiver.

8. All claims and expenses of the Receiver approved by the Court that, when incurred, were reasonably likely to benefit the receivership estate or necessary to the administration of the receivership estate (including, but not limited to, the Receiver's fees and expenses and the fees and expenses of all personnel and professionals retained by the Receiver), including such fees and expenses as may have been incurred in anticipation of the Receiver's appointment, shall have priority

over all claims incurred by, or arising against, the Kang Companies prior to the Effective Date including, but not limited to, any claims by alleged PACA beneficiaries to the funds maintained in the Receiver Account, or any claims by the secured creditors.

9. The Receiver shall not be liable for any act or failure to act or for any loss sustained through any error of judgment unless it results from the intentional or gross misconduct of the Receiver or his support staff. The determination of the intentional or gross misconduct of the Receiver or his support staff must be established by clear and convincing evidence. The Receiver's reasonable exercise or non-exercise of powers and discretion in accordance with the terms of this Order shall be conclusive on all persons. In addition, notwithstanding any provisions of this Order, the Receiver shall not any at any time be liable personally for any debt owing to Plaintiffs, or for any claim, obligation, liability, action, cost or expense of the Kang Companies or their affiliates to any person or entity, (including, without limitation, any environmental, tax, withdrawal liability and/or any other employment related claims, liabilities, obligations, or liens, and any amounts owed to any of Kang Companies' creditors because of the duties imposed upon the Receiver hereunder) whether arising out of or related to events occurring prior to or after the Effective Date. Nothing in this Order shall grant any additional rights to trade creditors or general unsecured creditors whose claims are solely against the Kang Companies. Such trade creditors' and general unsecured creditors' rights shall be solely determined in accordance with applicable law, except as expressly set forth herein. Any execution of documents by the Receiver pursuant to the powers and rights conveyed by this Order shall be construed as having been executed by the Receiver solely and exclusively in his capacity as Receiver, and not as an actual party to this action or to any such agreement or writing.

10. Except as otherwise expressly provided herein, nothing in this Order modifies, amends, or limits in any way whatsoever the rights and remedies of the Plaintiffs as PACA trust creditors or of NCCB or ULC as secured creditors under their respective loan documents.

11. This Order may only be amended or modified by express written consent of all parties to this action, and absent such consent, by order of this Court.

12. This Court shall exercise exclusive *in rem* jurisdiction over this action, the Receivership Assets, and the Receiver Account established pursuant to this Order. The Court also hereby retains jurisdiction to enter further Orders to enforce the terms of this Order. Nothing herein affects the jurisdiction of the United States Bankruptcy Court over bankruptcy estate assets or over Raymond A. Yancey, the Chapter 11 Trustee appointed in *In re Min Sik Kang, et al.*, Case No. 10-18839 (Bankr. E.D.Va.), or any subsequently appointed Chapter 7 Trustee, or the rights or obligations of the Chapter 11 or Chapter 7 Trustee under the United States Bankruptcy Code or under any orders of the United States Bankruptcy Court.

**IT IS SO ORDERED.**

Dated this 22 day of March.

United States District Judge Peter J. Messitte